**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | | |
|---|---|---|
| NORRIS HOLDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | No. 2:10-cv-36-JMS-DKL |
| | ) | |
| H.J. MARBERRY, Warden, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**Entry Discussing Motion for Summary**
**Judgment as to Specified Retaliation Claims**

Plaintiff Norris Holder, a prisoner at the United States Penitentiary in Terre Haute, Indiana, alleges that he complained of staff abuses in the Special Confinement Unit (SCU) and as a result was the victim of retaliation. Holder alleges: 1) that he was subjected to a cell search on November 10, 2008, in retaliation for complaining to SCU administrative officials and Warden Marberry regarding Officer Cox taking his evening orderly position; and 2) during the cell search defendants Atterbury and Cox improperly confiscated 547 postage stamps from Holder and subjected him to disciplinary action for the contraband.[1] In addition, defendant Ryherd allegedly took affirmative action to conceal the retaliatory cell search and taking of the stamps. Warden Marberry allegedly was aware of a protracted and widespread practice of retaliatory actions being taken against SCU inmates for voicing complaints and filing administrative remedies, yet she deliberately turned a blind eye.

Former Warden Marberry, Correctional Counselor Bruce Ryherd, Senior Officer Specialist Shari Cox, and Material Handler Supervisor Randy Atterbury (the defendants) deny that Holder's constitutional rights were violated and seek resolution of this action through summary judgment.

For the reasons explained in this Entry, the defendants' motion for summary judgment is **granted.**

---

[1] Holder's claim that another instance of retaliation occurred when Officer Cox took his evening orderly position in the SCU was resolved in the Entry issued on September 28, 2011, and is not discussed separately in this Entry.

# I. Summary Judgment Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). A fact is material if it might affect the outcome of the suit under the governing law, and a dispute about a material fact is genuine only if the evidence would allow a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

"As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1103 (7th Cir. 2008) (citations omitted).

"'It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered.'" *Sanders v. Village of Dixmoor,* 178 F.3d 869, 870 (7th Cir. 1999) (quoting *Liberles v. County of Cook,* 709 F.2d 1122, 1126 (7th Cir. 1983)).

Holder is proceeding without counsel. On account of this, he was notified of the nature of the defendants' motion for summary judgment, of the proper manner in which to respond, and of the consequences of failing to respond properly. *See Timms v. Frank*, 953 F.2d 281, 285 (7th Cir. 1992)(a district court should not grant summary judgment against a pro se litigant who was not adequately apprised of the steps necessary to proceed to trial). As a pro se litigant his filings are to be liberally construed, but his "pro se status doesn't alleviate his burden on summary judgment." *Arnett v. Webster*, 2011 WL 4014343, *14 (7th Cir. 2011).

# II. Material Facts

Holder argues that the defendants' affidavits are insufficient because they do not comply with Rule 56 of the *Federal Rules of Civil Procedure*. He argues that they should be disregarded in whole or part. Materials which do not comply with the standard of Rule 56(c)(4) are to be disregarded. *Ziliak v. AstraZeneca LP,* 324 F.3d 518, 520 (7th Cir. 2003). However, the court does not find the evidentiary materials relied on by the defendants to be inadequate to the purpose for which they have been submitted. This includes the competence of the affiants to attest to various matters. *See* FED.R.CIV.P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

Consistent with the foregoing standard, the following statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to Holder as the non-moving party.

### The Parties

*Mr. Norris Holder.* Plaintiff Holder is incarcerated at the Federal Correctional Institution ("FCI"), which is within the Federal Correctional Complex at Terre Haute, Indiana ("FCC-Terre Haute" or "FCC"). He is housed in the SCU, which is for inmates under a sentence of death in the federal court system. Inmates in that unit are some of the most dangerous inmates in the Bureau of Prisons ("BOP").

*Warden Marberry.* Between January, 2008, and December 17, 2010, Warden Marberry was employed by the BOP as the Complex Warden of the FCC. Her duties as the Complex Warden were supervisory in nature. She had no role in the daily operation of the SCU, nor did she personally search inmate cells.

*Mr. Bruce Ryherd.* Mr. Ryherd is currently employed as a Correctional Counselor at the FCC. Prior to that, Mr. Ryherd was employed as a Correctional Counselor in the SCU from 2003 until December 18, 2009.

*Ms. Shari Cox.* Officer Cox is currently employed as a Senior Officer Specialist at FCC. She has been employed in this position since July 1996.

*Mr. Randy Atterbury.* Officer Atterbury was employed as a Correctional Officer at all times relevant to the allegations contained in Holder's complaint.

### Stamps

Inmates in the SCU are prohibited from obtaining stamps from other inmates and/or outside sources. Inmates are allowed to possess three books of stamps at any given time. Any stamps in excess of $26.40, and without approval, may be considered contraband. Inmates in possession of more than the allotted number of stamps are subject to disciplinary action.

Stamps are very valuable in a prison environment. Mr. Ryherd, Mr. Royer and Officer Cox testified that based on their correctional experience—Mr. Ryherd has 23-years of correctional experience, Mr. Royer has 7-years of correctional experience, and Officer Cox has 17-years of correctional experience—inmates use stamps as currency in prison environments. Inmates utilize stamps for everything from gambling to payment to other inmates for a variety of services. They are also aware that the misuse of stamps inside the prison can set up dangerous imbalances of power within a housing unit. To protect the secure and orderly operation of the institution, inmates are not permitted to possess more stamps than allotted by policy.

### November 10, 2008, Search and Confiscation of Stamps

Pursuant to BOP policy, each shift is required to conduct area and cell searches in order to detect and eliminate contraband from the inmates and their living areas. On

November 10, 2008, Officer Atterbury conducted a random search of Holder's cell in accordance with Program Statement 5521.05, which provides that searches are to occur routinely but irregularly.

In the course of the search, Officer Atterbury discovered a postage stamp cache. Specifically, twenty-seven books of postage stamps and seven individual postage stamps—a total of 547 stamps in all—were found. In addition, United States currency in the denomination of a nickel and a dime was discovered in Holder's unsecured locker. The postage stamps were separated into bundles when Officer Atterbury located them. Officer Atterbury returned three books of stamps to Holder and confiscated the remaining stamps.

Officer Atterbury then wrote a confiscation report for all items found. Four hundred eighty-seven (487) postage stamps, as well as the currency, were placed in a legal-sized envelope by Officer Atterbury. The confiscation report was attached. At the conclusion of Officer Atterbury's shift, he physically placed the envelope, with the confiscation report, in the grey confiscation property box, located next to the black cop-out box at the FCC. (This is a box in which inmates place administrative grievances.)

Officer Atterbury also wrote an Incident Report charging Holder with a violation of Code 303, *Possession of Money or Currency*, and a violation of Code 305, *Possession of Anything Not Authorized*. When inmates are found to be in possession of contraband, staff are required to write incident reports. The disciplinary matters are then handled either at the unit team level or above.

After searching Holder's cell, Officer Atterbury recorded the search in the "SCU Shakedown Record" which is a log of every cell search performed on the Unit. The log that recorded this particular search was opened on December 30, 2006, and closed on March 29, 2010. The searches must be recorded in the SCU Shakedown Record regardless of whether or not contraband is found. The SCU Shakedown Record is maintained in the regular course of business. On November 10, 2008, Officer Atterbury recorded in the SCU Shakedown Record that he conducted a random search of Holder's cell on evening watch. In the "Contraband" column of the SCU Shakedown Record, it was recorded that Officer Atterbury found a government pen, 547 stamps and money. In the "Disposition" column of the SCU Shakedown Record, it was noted that Officer Atterbury returned the contraband to the Lieutenant's office. Officer Atterbury has no further knowledge as to the disposition of the postage stamps.

When an inmate possesses contraband for which he cannot establish ownership, the staff will make a reasonable effort to determine ownership of the property; failing that, the contraband will be destroyed.

Holder testified that the confiscated stamps were never returned to him and that he was never advised that the confiscated stamps were designated for destruction nor was he interviewed regarding the ownership of the confiscated stamps. Mr. Ryherd did, however, conduct a review of Holder's commissary account for the previous six (6)

months and found that Holder had not purchased any postage stamps during that period of time. The stamps were slated for destruction.

On November 12, 2008, Holder gave Mr. Ryherd the confiscation slip that Officer Atterbury and Officer Cox provided to him on November 10, 2008. Mr. Ryherd told Holder that he would make a photocopy of the confiscation slip and return the original to Holder. In February 2009, Mr. Ryherd told Holder that he had either lost the confiscation slip or gave it to Unit Manager Julian. Holder asked Mr. Julian about the confiscation slip and Mr. Julian told Holder that Mr. Ryherd had not given it to him. A copy of the confiscation slip should have been placed in Holder's central file. It was not.

Prior to and during the search, Officer Atterbury was not aware of any complaints Holder made with regard to staff or conditions in the SCU, including cell searches. Similarly, Officer Cox testified that while she was the officer in charge the inmates, including Holder, were held accountable for any contraband they possessed and BOP rules and regulations were uniformly enforced. Officer Cox does not recall Holder having ever voiced any complaints regarding staff or conditions on the SCU at the time of the cell search and incident report. Officer Cox did not have any involvement with the stamps once they were processed by Officer Atterbury, and she does not know what became of them.

Holder complained on numerous occasions to Warden Marberry that Officer Cox retaliated against him; specifically, that the search and confiscation of his stamps were motivated by Officer Cox's retaliatory animus. Warden Marberry assured Holder that she would investigate his complaints and get back with him, but she did not. Warden Marberry has no specific recollection of a conversation with Holder concerning "retaliatory shakedowns" of inmate cells or the confiscation of his property in particular.

A review of the administrative remedies filed by Holder reveals that Warden Marberry signed the response to Administrative Remedy # 531827-F1 on May 15, 2009. Warden Marberry did not personally investigate Holder's claims as she relied upon the investigation conducted by the staff member assigned to research his claims and Warden Marberry has no personal knowledge regarding the issues raised in Holder's complaint.

In this Administrative Remedy # 531827-F1, Holder alleges "staff conducted a 'retaliatory shakedown' and unlawfully confiscated personal property." His request for a remedy was rejected because the investigation revealed staff were interviewed and stated they confiscated stamps in Holder's possession which were in excess of the limit permitted.

### III. Discussion

Holder's claims of retaliation are based on the First Amendment. Holder admits in his response brief that the search of his cell and the confiscation of his stamps did not independently violate his constitutional rights. But, he argues that this otherwise

permissible conduct was impermissible because it was done for retaliatory reasons. *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000).

A prisoner has a right under the First Amendment to file grievances and lawsuits complaining about the conditions of his or her confinement without retaliation by prison officials for the exercise of that right. *See Babcock v. White,* 102 F.3d 267, 274-75 (7th Cir. 1996). To succeed on a First Amendment retaliation claim requires that Holder prove that: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) a causal connection existed between the two. *Watkins v. Kasper,* 599 F.3d 791, 794 (7th Cir. 2010); *Bridges v. Gilbert,* 557 F.3d 541, 546 (7th Cir. 2009).

The defendants first argue that they are entitled to summary judgment because Holder cannot establish each of the elements of a retaliation claim. Specifically, it is contended by the defendants that Holder cannot establish that his speech was protected, nor can he establish that the cell search and confiscation of a large number of contraband stamps would not have occurred but-for the allegedly retaliatory animus. Second, they contend that there is a lack of personal involvement as to Warden Marberry and Counselor Ryherd.

### *Retaliation*

Holder alleges that the search of his cell and the confiscation of what he alleged was almost $300 worth of his personal property constituted retaliation in violation of his First Amendment rights.

#### 1. *Protected Activity*

Although the defendants argue otherwise, the court assumes for the purpose of this analysis that Holder's complaints regarding his treatment by Officer Cox, specifically her refusal to allow him to work as an orderly when she was on duty, was protected speech.

#### 2. *Likely to Deter First Amendment Activity*

To meet the second prong of the analysis, the action taken must be of a type that would "deter a person of ordinary firmness from exercising First Amendment activity in the future." *Bridges*, 557 F.3d 555. The evidence reflects that the alleged deprivation (the search of his cell and confiscation of stamps in excess of the number permitted by the BOP) was not of a type that would likely deter "a person of ordinary firmness" in the future. *Watkins*, 557 F.3d at 555. The record demonstrates that Holder did in fact persist in complaining about what he perceived to be the retaliatory shakedown and taking of his property. In addition, he filed additional administrative remedies after the alleged retaliation. Holder was not deterred.

Holder appears to argue that there is a material question of fact regarding whether BOP policies and procedures were followed after Officer Atterbury initially confiscated the stamps. Specifically, Holder argues that he should have been interviewed so that he could demonstrate ownership of the stamps by providing receipts, he should have been given documentation describing the items slated for destruction, and a copy of the confiscation slip should have been placed in his central file. Further, Holder alleges in his complaint that Officers Cox and Atterbury told Holder that if he wanted to "donate" the stamps, there would be no disciplinary action taken against him. Even when the facts are considered in the light most favorable to Holder, the fact that certain policies were not followed after the stamps were confiscated would not deter a person of ordinary firmness from exercising their First Amendment rights in the future. This is particularly true in light of the fact that additional remedies were available to Holder if his personal property was improperly taken or processed. Quite simply, the search of Holder's cell and the confiscation of contraband would not be an activity that would be of sufficient severity to deter a person of ordinary firmness from exercising his rights, especially in light of the lack of expectation of privacy in his cell and the lack of any right to contraband. The actions complained of are not the type of actions that would deter First Amendment activity in the future.

### 3. Causation

As to the third prong, the Seventh Circuit has discussed the causal connection that must be shown as being "but-for causation." *Fairley v. Andrews,* 578 F.3d 518, 525-26 (7th Cir. 2009) (citing *Gross v. FBL Financial Services*, Inc., 129 S. Ct. 2343 (2009) and noting that cases saying "that a plaintiff just needs to show that his speech was a motivating factor in defendant's decision" did not survive *Gross"*). Holder relies on *Bridges* to support his position that retaliation only needs to be "at least a motivating factor." But *Bridges* was decided prior to the Supreme Court's decision in *Gross* and is no longer controlling on this point. *Watkins v. Kasper*, 599 F.3d 791 (7th Cir. 2010), is also of no use to Holder because it does not cite to *Bridges* for the proposition that retaliation need only be a motivating factor. To the contrary, *Watkins* states that the third prong of a First Amendment retaliation claim requires "a causal connection between the two." 599 F.3d at 794.

"The element of causation is negated where the allegedly retaliatory action would have happened regardless of the defendant's motives." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1976). A prisoner can state a claim for retaliatory treatment by alleging a chronology of events from which retaliation can be inferred. *See Johnson v. Stovall,* 233 F.3d 486, 489 (7th Cir. 2000). Motivation is a question of fact that turns on evidence. *See Slusher v. N.L.R.B.,* 432 F.3d 715, 726 (7th Cir. 2005); *SCA Tissue N. Am. LLC v. N.L.R.B.*, 371 F.3d 983, 988-89 (7th Cir. 2004).

Holder cannot establish the required causal connection as to the search and confiscation of contraband. Holder cannot establish that no search would have occurred "but-for" the alleged retaliatory animus. First, Officer Atterbury has established that he had no knowledge as to the alleged complaints made by Holder. The protected conduct

"'cannot be proven to motivate retaliation[ ] if there is no evidence that the defendants knew of the protected [activity].'" *Martin v. City of East Chicago*, 349 F.3d 989, 1005 (7th Cir. 2003) (*quoting Stagman v. Ryan*, 176 F.3d 986, 1000-01 (7th Cir. 1999) (*quoting O'Connor v. Chicago Transit Auth.,* 985 F.2d 1362, 1369-70 (7th Cir. 1993)).

Second, the evidence is that the search of Holder's cell and confiscation of the contraband would have occurred at some time. Thus, the argument that the search occurred on the "heals of the complaints Holder presented to Warden Marberry" is not persuasive. Dkt. 48 at p. 15. Pursuant to Program Statement 5521.05, cell searches in the SCU were to occur routinely, but irregularly. Each shift is required to conduct cell searches to detect and eliminate contraband. There was a $26.40 limit on the amount of stamps an inmate could have and Holder's confiscated stamps in excess of that value were contraband. Holder cannot show that his cell would not have been searched and the contraband confiscated but-for a retaliatory animus.

Holder argues that that he has shown that the cell search and confiscation of stamps by Officer Atterbury was ordered by his superior officer, Officer Cox, in retaliation for his complaints to Warden Marberry about Officer Cox terminating his orderly position. A prisoner must show more than his personal belief that he is the victim of retaliation, *Woods v. Edwards,* 51 F.3d 577, 580 (5th Cir. 1995), yet that is the extent of Holder's presentation.

Holder cannot establish that "but for" his alleged protected speech his cell would not have been searched, the contraband stamps confiscated and an incident report based on the contraband issued.

If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.,* 94 F.3d 1121, 1124 (7th Cir. 1996). That is the case here as to the second and third elements of a claim of retaliation. The defendants are entitled to summary judgment based on Holder's claim of retaliation arising from the November 10, 2008, cell search and the confiscation of the contraband found in his cell during that search.

### Warden Marberry and Counselor Ryherd

Holder alleges that Warden Marberry promised an investigation of Holder's complaints. Holder's claim against Counselor Ryherd is based upon matters occurring after the contraband stamps were confiscated in that he allegedly attempted to cover up Officers Cox's and Atterbury's improper confiscation of his stamps. Holder makes no allegation that defendants Warden Marberry or Counselor Ryherd were directly involved in the alleged retaliation. Thus, these defendants argue they lack the personal involvement required for relief in a *Bivens* claim.

Holder replies that because Warden Marberry and Counselor Ryherd knew of the retaliation and failed to cure it, they violated the Constitution themselves. "That

proposition would not help him if it were correct, for he has lost on all of his underlying constitutional theories. But it is not correct. Only persons who cause or participate in the violations are responsible." *George v. Smith,* 507 F.3d 605, 609 (7th Cir. 2007) (*citing Greeno v. Daley*, 414 F.3d 645, 656-57 (7th Cir. 2005); *Reed v. McBride*, 178 F.3d 849, 851-52 (7th Cir.1999); *Vance v. Peters*, 97 F.3d 987, 992-93 (7th Cir. 1996)).

Both Warden Marberry and Mr. Ryherd are entitled to summary judgment on Holder's *Bivens* claims against them. As to Warden Marberry, there is no evidence that she was directly involved in the actions of which Holder complains and Holder cannot pursue a claim against the Warden under a *respondeat superior* theory. Further, Warden Marberry cannot be found liable merely because she was involved in the administrative remedy process. *George*, 507 F.3d at 609-10. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation. *Id.* at 609.

Neither Warden Marberry nor Counselor Ryherd were personally involved in any matter that would rise to the level of a constitutional violation. Without such a violation, a *Bivens* claim cannot be maintained.

Thus, summary judgment must be granted in favor of Warden Marberry and Counselor Ryherd as well.

## IV. Conclusion

"Federal courts must take cognizance of the valid constitutional claims of prison inmates." *Babcock v. White,* 102 F.3d 267, 275 (7th Cir. 1996) (quoting *Turner v. Safley,* 482 U.S. 78, 84 (1987)). It is established that "[a]n act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution." *DeWalt v. Carter,* 224 F.3d 607, 618 (7th Cir. 2000). However, Holder has not identified a genuine issue of material fact as to his claims based on staff at the FCC searching his cell and disposing of the contraband found during that search. "If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996). When the moving party has met the standard of Rule 56, summary judgment is mandatory. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Shields Enters., Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992).

The defendant=s motion for summary judgment [40] is **granted**. Judgment consistent with this Entry and with the Entry issued on September 28, 2011, shall now issue.

**IT IS SO ORDERED.**

Date: 10/06/2011  _____

_Jane Magnus-Stinson_
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana